IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER PAUL HEPDING, *
  *
    Plaintiff, *
  *
vs. * Civil Action No. ADC-17-3697
  *
COMMISSIONER, SOCIAL SECURITY *
ADMINISTRATION,[1] *
  *
    Defendant. *
  *
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On December 14, 2017, Christopher Paul Hepding ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint, the parties' cross-motions for summary judgment (ECF Nos. 17, 18), and the response thereto (ECF No. 19), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 17) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED.

### PROCEDURAL HISTORY

On February 28, 2014, Plaintiff filed a Title II application for DIB as well as a separate Title XVI application for SSI, which both alleged disability beginning on June 1, 2011. His claims were denied initially and upon reconsideration on June 6, 2014 and September 25, 2014,

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner of Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

1

respectively. Subsequently, on October 1, 2014, Plaintiff filed a written request for a hearing and, on June 20, 2016, an Administrative Law Judge ("ALJ") presided over a hearing. On November 1, 2016, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act [(the "Act")], from June 1, 2011, through [November 1, 2016,] the date of this decision." ECF No. 11 at 114. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on November 6, 2017, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the SSA. *See* 20 C.F.R. § 416.1481 (2018); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On December 14, 2017, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of his disability application. On August 7, 2018, Plaintiff filed a Motion for Summary Judgment, and Defendant filed a Motion for Summary Judgment on September 19, 2018. On October 22, 2018, Plaintiff responded to Defendant's motion.[2] This matter is now fully briefed and the Court has reviewed both parties' motions and the response thereto.

### STANDARD OF REVIEW

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests

---

[2] On November 9, 2018, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB and SSI, a claimant must establish that he is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant shall be determined to be under disability where "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the

duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work.

20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *2–13 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *6–8.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, with regard to Plaintiff's DIB claim, the ALJ preliminarily found that Plaintiff met the insured status requirements of Title II of the Act through June 30, 2012. ECF No. 11 at 108. However, the ALJ found that "[Plaintiff] did not have a severe impairment prior to this date" and denied Plaintiff's DIB claim at step two of the evaluation. *Id.* at 108–09.

With regard to Plaintiff's SSI claim, the ALJ performed the sequential evaluation and found at step one that Plaintiff "ha[d] not engaged in substantial gainful activity since June 1, 2011, the alleged onset date." *Id.* at 109. At step two, the ALJ found that Plaintiff had the severe impairments of "status post fracture of upper extremity, degenerative disc disease, obesity and depression." *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* At step four, the ALJ determined that Plaintiff had the RFC:

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except [Plaintiff] is able to retain and carry out simple instructions; sustain concentration, persistence, and pace for up to two hour periods at a time for a maximum eight hour work period, occasional interaction with the public, coworkers, and supervisors, and little to no change in the work setting from day to day.

*Id.* at 110. The ALJ then determined that Plaintiff had past relevant work as a chimney worker, but that he was unable to perform such work. *Id.* at 113. Finally, at step five, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* at 114.

7

Thus, the ALJ concluded that Plaintiff "ha[d] not been under a disability, as defined in the [Act], from June 1, 2011, through [November 1, 2016,] the date of this decision." *Id.*

## DISCUSSION

Plaintiff raises two allegations of error on appeal: (1) that the ALJ improperly accounted for Plaintiff's moderate difficulties in concentration, persistence, or pace in the RFC finding; and (2) that the ALJ failed to properly evaluate whether Plaintiff's impairments met or equaled Listing 1.04A. Each of Plaintiff's arguments lack merit and are addressed below.

### A. The ALJ's RFC Determination Properly Accounted For Plaintiff's Moderate Difficulties With Concentration, Persistence, Or Pace.

Plaintiff first contends that the ALJ's RFC assessment failed to adequately account for his moderate difficulties in concentration, persistence, or pace in violation of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). ECF No. 17-1 at 9. Defendant counters that the ALJ included mental limitations that adequately addressed Plaintiff's moderate difficulties in concentration, persistence, or pace. ECF No. 18-1 at 10. The Court agrees with Defendant.

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Listings 12.00 *et seq.* pertain to mental impairments. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00. "Each [L]isting therein, consists of: (1) a brief statement describing its subject disorder; (2) 'paragraph A criteria,' which consists of a set of medical findings; and (3) 'paragraph B criteria,' which consists of a set of impairment-related functional limitations." *Rayman v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-3102, 2015 WL 6870053, at *2 (D.Md. Nov. 6, 2015) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)). If the paragraph A and paragraph B criteria are satisfied, the ALJ will find that the claimant meets the listed impairment. *Id.*

8

Paragraph B provides the functional criteria assessed by the ALJ and consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)(2)(b). The ALJ employs a "special technique" to rate the degree of a claimant's functional limitations in these areas. 20 C.F.R. §§ 404.1520a(b), 416.920a(b). The ALJ's evaluation must determine "the extent to which [the claimant's] impairment(s) interferes with [the] ability to function independently, appropriately, effectively, and on a sustained basis" and must include a specific finding as to the degree of limitation in each of the four functional areas. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). "To satisfy the paragraph B criteria, [a claimant's] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)(2)(b).

The functional area of concentration, persistence, or pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(E)(3). According to the regulations, examples of the ability to focus attention and stay on task include:

> Initiating and performing a task that [the claimant] understand[s] and know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

*Id.*

At step three of the sequential evaluation in the instant case, the ALJ determined that "[w]ith regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties," and explained that "[Plaintiff] has some difficulty staying focused." ECF No. 11 at 110. The ALJ then determined that Plaintiff had the RFC:

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except [Plaintiff] is able to retain and carry out simple instructions; sustain concentration, persistence, and pace for up to two hour periods at a time for a maximum eight hour work period, occasional interaction with the public, coworkers, and supervisors, and little to no change in the work setting from day to day.

*Id.*

In *Mascio*, the Fourth Circuit recognized a difference between the ability to perform simple tasks and the ability to stay on task. 780 F.3d at 638. The latter ability concerns the broad functional area of concentration, persistence, or pace. *Id.* Like *Mascio*, the ALJ's RFC determination included a non-exertional restriction to simple, routine, repetitive tasks. ECF No. 11 at 110. However, unlike *Mascio*, the ALJ's RFC assessment in this case also included additional limitations which restricted Plaintiff to work with "occasional interaction with the public, coworkers, and supervisors, and little to no change in the work setting from day to day." *Id.*

While a limitation to simple, routine, repetitive tasks alone is insufficient under *Mascio*, courts in this district have uniformly found that further RFC restrictions limiting claimants to work with few changes and limited interaction with others adequately account for a claimant's moderate limitations in concentration, persistence, or pace. *See, e.g., Lathan v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-444, 2016 WL 1056562, at *3 (D.Md. Mar. 16, 2016) (finding no error under *Mascio* where the ALJ restricted the claimant's RFC to non-production work which "should not include productions [sic] standards, judgment changes, and/or *frequent general*

*changes to the routine work environment*" (emphasis added)); *Chase v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-2961, 2016 WL 199410, at *1, *3 (D.Md. Jan. 15, 2016) (finding no error where the ALJ restricted the claimant's RFC to "simple, routine, and repetitive tasks, in a 'low stress' job (defined as requiring no more than occasional decision making and *no more than occasional changes in the work setting*) . . . ; *with no interaction with the general public; and with no more than occasional interaction with co-workers*" (emphasis added)); *Rayman*, 2015 WL 6870053, at *3 (finding no error where the ALJ restricted the claimant's RFC to a "low stress environment, such that there are *few changes in the work setting* and no fast-paced or quota production standards; *and the claimant is limited to occasional contact with the public, supervisors, and co-workers*" (emphasis added)).

Here, contrary to Plaintiff's assertions, the ALJ's finding specifically, and appropriately, accounted for Plaintiff's limitation in concentration, persistence, or pace by restricting him to "occasional interaction with the public, coworkers, and supervisors, and little to no change in the work setting from day to day." ECF No. 11 at 110. These limitations specifically address Plaintiff's ability to stay on task by assuring that Plaintiff will not be distracted or required to adapt to changes in the workplace. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(E)(3). Thus, the ALJ's RFC assessment adequately accounted for Plaintiff's moderate limitation in concentration, persistence, or pace. Accordingly, remand based on *Mascio* is unwarranted in this case.

### B. Substantial Evidence Supports The ALJ's Determination That Plaintiff Does Not Meet A Listing.

Plaintiff's final argument alleges that the ALJ erred at step three of the sequential evaluation by improperly evaluating whether Plaintiff's spine impairments met or equaled

Listing 1.04A, outlined in 20 C.F.R. pt. 404, subpt. P, app. 1. ECF No. 17-1 at 15–22. The Court disagrees.

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Where a claimant can show that his condition "meets or equals the listed impairments," the claimant is entitled to a conclusive presumption that he is disabled within the meaning of the Act. *Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *see McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979) (stating that the listings, if met, are "conclusive on the issue of disability"). The burden of proof is on the claimant to show that he meets *all* of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F.Supp.2d 384, 390 (D.Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). However, "[u]nder *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D.Md. 1999). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." *Id.* On the other hand, "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford*, 734 F.3d at 295 (internal citations omitted).

Remand is appropriate where the "ALJ's opinion failed to apply the requirements of the listings to the medical record." *Id.* at 292; *Fox v. Colvin*, 632 F.App'x 750, 755–56 (4th Cir. 2015) (holding that the ALJ's conclusory and perfunctory analysis at step three necessitated remand). In evaluating whether an ALJ's listing comparison was proper, however, the Court is not confined to the ALJ's analysis at step three and instead must consider the reasoning provided by the ALJ in the decision in its entirety. *See Schoofield v. Barnhart*, 220 F.Supp.2d 512, 522 (D.Md 2002) (holding remand is not warranted "where it is clear from the record which [Listing] . . . w[as] considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the [s]tep [t]hree analysis which allows [the reviewing c]ourt readily to determine whether there was substantial evidence to support the ALJ's [s]tep [t]hree conclusion").

Listing 1.04A states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. pt. 404, subpt. P, app. 1, 1.04A. In other words, a claimant must demonstrate that he meets all four requirements of Listing 1.04A for an ALJ to make a finding that his impairment meets or equals the listed impairment. *See Sullivan*, 493 U.S. at 530.

During his step three analysis, the ALJ explained why Plaintiff failed to meet the requirements of Listing 1.04A:

> The undersigned considered Listing 1.04, due to [Plaintiff]'s degenerative disc disease. This is the listing for spinal disorders. However, the medical evidence lacks the required clinical evidence to support a finding that [Plaintiff] meets the listing. There is no evidence of nerve root or spinal cord compression, nor is there evidence that [Plaintiff] is unable to ambulate effectively.

ECF No. 11 at 109. Here, the ALJ clearly identified a listed requirement that he found unsupported by Plaintiff's medical record. Specifically, the ALJ determined "[t]here is no evidence of nerve root or spinal cord compression[.]" *Id.* However, Plaintiff argues that the ALJ's reasoning is "patently false, given that Plaintiff has been repeatedly diagnosed with 'Lumbar sacral Radiculopathy,'" which is medically defined as compression of the nerve root. ECF No. 17-1 at 19 (internal record citations omitted).

Review of the medical record demonstrates that Plaintiff was diagnosed with radiculopathy in the lumbosacral region beginning in 2015, ECF No. 11 at 616, and continuing into 2016, *id.* at 407. However, as the ALJ discussed in his step four analysis, the medical record also contained evidence that did not support a Listing 1.04A finding:

> In January 2014, [Plaintiff] reported worsening numbness of the lower leg at night. However, his examination that day was normal. He was no longer prescribed Coumadin for deep vein thrombosis. On October 10, 2014, [Plaintiff] complained of lower back pain radiating into his legs with burning and numbness. [Plaintiff] underwent an MRI of the lumbar spine on October 29, 2014. Results showed mild degenerative changes, mild right foraminal stenosis, and mild disk degeneration, worse at the L1-2 and L3-4.
>
> On March 25, 2015, [Plaintiff] underwent a left sacroiliac joint injection for pain control. Nerve conduction studies done on May 8, 2015 were negative. [Plaintiff] reported that his medications were helping with his pain at a July 31, 2015 appointment. On August 6, 2015, [Plaintiff] had another MRI of the lumbar spine [which] showed mild degenerative changes in the facet joints and sponylotic changes. There was also mild narrowing of the right neural foramen at the L3-4, which was similar to the previous study.

> . . . .
>
> At a June 30, 2016 appointment, [Plaintiff] reported that his pain was relieved about 75 percent by his current injections. He did exhibit positive straight leg raising, both seated and supine.
>
> . . . .
>
> Partial weight goes to Dr. Sajadi's May 31, 2014 consult. Dr. Sajadi's examination of [Plaintiff] was normal. He did complain of pain in the lower back with range of motion, but [Plaintiff] still had full strength and full range of motion. . . .

*Id.* at 111–13 (internal record citations omitted).

In this discussion, the ALJ cited to substantial evidence in the record demonstrating that Plaintiff did not meet all the requirements for Listing 1.04A. Specifically, the ALJ noted that Plaintiff's nerve conduction studies were negative, indicating that Plaintiff did not suffer from nerve root compression, and that two of Plaintiff's MRIs in 2014 and 2015 showed Plaintiff had mild degenerative changes but no central canal stenosis or compression. *Id.* at 112. Additionally, although Plaintiff did exhibit a positive straight-leg raise in both the sitting and supine position, the ALJ cited to records demonstrating that Plaintiff's other physical examinations were normal, with musculoskeletal findings of no tenderness, deformity, or weakness in extremities. *Id.* at 111–12. Finally, the ALJ noted that Plaintiff exhibited full range of motion and full strength at a consultative examination in May 2014. *Id.* at 113. Therefore, in light of the evidence in the medical record demonstrating that Plaintiff did not meet each of the requirements for Listing 1.04A, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's impairments do not meet or equal Listing 1.04A.

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within

the meaning of the Act from June 1, 2011 through the date of the ALJ's decision. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 17) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED, and the decision of the Social Security Administration is AFFIRMED. The clerk is directed to CLOSE this case.

Date: 26 November 2018

A. David Copperthite
United States Magistrate Judge